Good morning. May it please the court, my name is Kari Hong and as co-counsel I represent Petitioner Guadalupe Chalup. There are three reasons why the court should grant our petition for review. The first is that the BIA erred in finding that the conviction under 13-1506-A1 matches the federal definition of a burglary. The BIA ignored Arizona law in which a subsection A1 conviction was upheld for entry into a truck, a van, a car, a motorcycle. All of those cases are cited in a Rule 28 letter as well as our opening brief on page 1415. The Supreme Court, the BIA, and the Ninth Circuit all hold that entry into a motor vehicle does not match the federal definition of a burglary. Indeed, subsection 1507 is the Arizona statute in which residential structures exist that would match the generic burglary offense. On this basis alone, the court can grant our petition for review. A second and independent reason as to why we should prevail is that there is insufficient evidence to establish that Mr. Chalup was convicted under subsection A1 and not just the general statute 1506. The four court-produced documents only reference section 1506. This is the information, the complaint, the plea agreement, and the sentence. The only contrary evidence that references subsection A1 is the disposition filed by the Department of Public Safety. We contend that this document falls out of the Shepard and Taylor documents as noticeable documents because they were not prepared by a judicial officer. This is not a judicial document. It was filed 13 days after the plea, which contends that there was no opportunity for Mr. Chalup to contest its validity, that this document can be modified online by many individuals in many different agencies, and in fact, as referenced in our brief, the state of Arizona and the police department actually were engaged in litigation over who in fact controls the database. This is very different than the reliable document referenced in Shepard and Taylor for which a judicial officer would have control. The third reason is that the BIA erred in failing to look at what Mr. Chalup was in fact convicted of. This case is highly unique in that Paragraph 4 of the plea agreement provides that there is a complaint that can be answered to make a plea, that the Paragraph 4 amends any complaint to reference only the statute that Mr. Chalup pledged to in the plea agreement. The plea agreement only references 1506, and under the Young case, which was cited in 2012, the Young directs this court to look at state law to understand how state-specific plea agreements operate. The Wilson case, cited in our Rule 28 letter, makes clear that the Paragraph 4 permits the written amendment without any additional filing. This Judge Hawkins, Counsel, the government suggests that we remand to the board to allow them to consider, if you will, your client's full body of work. What's wrong with that? This morning I filed a response to the Rule 28 letter. The problem is that there is no known expertise to the BIA to independently determine the scope of the state conviction or the scope of the state statute at issue and then the documents in the record. Unlike a case that would demand remand, this case has de novo review, and the question is whether 1306, A1 even, has the scope that the BIA found that it did. The problem is that the government has not cited to any document in the record that contravenes our analysis or that, first of all, that even under Subsection A1 does not include a motor vehicle. And then the other issue that the government has never pointed to, that even if we are mistaken and he was, or even if we were right that he was not even convicted under A1, there's still no document to show that he was convicted of offense that matches the federal definition of burglary. If I understand the government's position, and they can clarify it when counsel gets up, it's that we should remand to the board, perhaps for them in turn to remand to the IJ, to consider whether, given your client's entire criminal history, he can establish good moral character. What's wrong with that? Well, our contention is that the government first has to prove the ground of removability. This is not a cancellation case where the burden would shift for Mr. Chalup to prove either he didn't commit an aggravated felony or that he's a person of good moral character. We are contending that the government, in the first instance, never met its burden to show that Mr. Chalup has committed a removable offense. Because the burden is on the government and the government tried to meet that, there's nothing in the record to show that it meets its initial burden. Ms. Long, this is Mary Murguia. How about the theft? Can you talk about the theft, and would it be appropriate to remand to consider the theft? Because I don't believe the IJ did the analysis that was necessary. Yes, Your Honor, he did not, and that is an open question. However, there's nothing again that the government has pointed to to show that it could meet the theft offense. In fact, the document that we're contesting should not be relied upon in 196. It mentions the other potential charge was actually criminal damage and defacement. So the most likely inference is that Mr. Chalup entered into a motor car and committed defacement, which is not a theft offense under the INA. So in your assessment, because of the burglary, I guess, failing the categorical sort of analysis and then also the modified, we look to the theft, that would also fail the categorical and the modified? Well, it does in this instance because there is – it definitely, yes, under the – it fails the categorical out of hand, and there's nothing to the record just that the conviction and issue involved any sort of theft. It does not mention anything in the record that mentions what the intended felony was that Mr. Chalup had when he entered into the non-residential structure. So, excuse me, this is Judge Schroeder. So is your position that the IJ should have terminated the proceedings? Yes, Your Honor. All right. Will you have time for rebuttal if you want to stop right now? Yes, Your Honor. May I would respectfully wish to reserve the rest of my time. Okay. Good morning, Your Honors, and may it please the Court, Michael Heist on behalf of the Respondent, the Attorney General of the United States. If the Court is not inclined to uphold the Board's decision in this matter, it should remand this matter to the agency based on fundamental principles of administrative agency law and immigration law. The Board's recent published decision in matter of Lanferman refined the framework through which the agency considers convictions and whether or not they constitute aggravated felonies. And it's axiomatic that the agency should be given the first opportunity to apply new law to a case where there's a question such as those presented here. And you're citing Nijhawan? I'm not sure if I'm saying that right. Nijhawan. Okay. That is a tough one. And that's kind of the point. Nijhawan came out in 2009. This decision was from 2008. Since that time, there's been a remarkable number of cases that have come out all the way through this Court's decision in Young. And I appreciate that. In most instances, I'm just curious here, it appears that Nijhawan is limited to circumstance-specific crimes and does not apply to generic crimes. And so, and that's based on the Carachuri case. So what's your best argument that this particular statute, the 1101A43G, is the type for which the specific circumstance offense applies? I understand the question there. And that's kind of the point. Again, this is still somewhat muddy. What we have is a matter of Lantherman, subsequent to all of these, subsequent to Nijhawan, subsequent to Carachuri-Rosendo, subsequent to Aguila-Montes de Aca. All of these cases seem to have a bit of a push and pull to each other. And the bottom line to all of them is that we're talking about immigration proceedings. And immigration proceedings are not criminal proceedings. And that's kind of a common thread through all of these decisions is that immigration proceedings being civil are not subject to the same strictures as, say, a sentencing hearing. As in a matter of Lantherman, the Board stated that the categorical approach itself need not be applied with the same rigor in the immigration context as in the criminal arena. But what are the circumstances designated in the 1101A43G? What are the specific circumstances? I'm not sure I understand Your Honor's question. Well, it seems like they're, it's limited to those crimes, and it seems like the burglary is a generic crime. So I'm just trying to figure out how that would work. And wouldn't that be just a waste of time? Well, I understand. I understand now. And that is curious in that what does it mean for a crime to be generic? Yes, burglary is generic. But, of course, the common law definition of burglary actually differs from what the Supreme Court said the definition of burglary is in Taylor. I can remember the definition of burglary that I learned for the bar exam. It's a little bit different. But each one is a little bit different. In the State statute here, the statute definitely goes beyond what the generic definition is. So the question is how do you get back to the generic definition? How do you look at the record to determine whether or not what the alien here did qualifies? And that's the kind of middle ground that Lanferman reaches, which is that because this is an immigration proceeding and not a criminal sentencing situation, it's not necessary to be so lockstep with the categorical and modified categorical approach and the necessarily judicially reliable documents. Yes, the proceedings must comport with due process. Yes, the documents must be judicially reliable. But ultimately, again, we're talking about an immigration proceeding and not a criminal sentencing case. So the government's burden of proof here, which was a question raised earlier, and I agree with the opposing counsel that, yes, the question here is removability, not the alien's qualification for discretionary removal relief. But the government's burden is not beyond a reasonable doubt in immigration cases. They have to prove removability by clear and convincing evidence. And that's clearly just not the same thing. And what we have here are documents that can sustain this individual's removability. Are there questions? Is the Arizona statute broader than the generic definition? Absolutely. We're not disputing that. And something I'd like to touch on as well, Fishner's counsel is disputing the board's reliance on the disposition report in this case. That is the one document here that indicates Chaloup violated 13-506A1. That issue, whether or not that document, whether or not the I.J. properly relied on that document was not presented to the board. So whether or not that was a proper act by the judge is an unexhausted question that this Court should lack jurisdiction to consider. Or alternatively, again, that's another reason to remand the case, because if the Court feels that was inappropriate or the agency should evaluate that in the first instance given the questions that Petitioner's counsel has raised, that is, again, something that the agency should consider in the first instance. What's your best case for allowing the government, if you will, a second bite at the apple? Well, several, actually. INS v. Ventura, Gonzalez v. Thomas, those militate towards giving the board the first opportunity to apply. Ventura is just the general remand to give the board an opportunity to do something that's in the record and pretty clearly in the record. This is really kind of unique. You distinguish this from criminal cases. That's true. They are civil, but they're also different than civil. For example, we cannot affirm or deny relief for any basis apparent in the record as we would in an ordinary civil case. So they're different in that respect also, aren't they? Yes. Well, the Court is inherently limited in what it can and cannot or should and should not do. And again, in Fiala v. Bell, a seminal Supreme Court case about 30 years, 40 years ago now, the Supreme Court acknowledged how broad the executive's authority is to allow people to remain in the country or to exclude people from the country. And that, again, militates towards giving the board the first opportunity to apply this whole body of law. Well, when you talk about you spoke about the flexibility that the board has in deciding what to look at in order to determine what the respondent did. But does your position with respect to that rely on Nijiwan? Is that where you get that? Nijiwan, Kayashori Rizendo, Madam Lanferman as well, just describing what immigration proceedings are. Even if it's a – even if it's not a crime of the particular circumstances, but it's generic. Right. That was – the circumstance-specific versus the generic crime distinction gets into situations where the – to be removable, there are facts that need to be established through judicially reliable documents. And to get to that, there has to be some kind of circumstance-specific review. We have a burglary. Every case? No. No, no. In Nijiwan, the Supreme Court made the distinction between the generic and the circumstance-specific. Well, why is – I'm sorry, but just why – again, why isn't this generic? Because we're talking about that. Right. And the statute is too broad. Right. This is – it's a generic crime. The aggravated felony itself is obviously – burglary is a generic crime. But to get to the point where you know if the individual committed the acts that the individual committed the acts that the individual committed, given that the Arizona statute is broader than the Federal definition, that invites some kind of middle ground here. Well, aren't you confusing a divisible statute of conviction with a circumstance-specific Federal crime listed in the 1101A43? I would agree it's confusing. Am I confused? Possibly. It's complicated. And that's, again, the point, that there's been so many back and forths on this and what it means to be circumstance-specific. And there's the colloquial – I mean, the generic definition of the word generic, or are we talking about generic crimes as an adjective on the burglary itself? It's all very muddy. And to get to the point where we can know if the individual has committed an aggravated felony. But it doesn't seem that confusing when 1101A43G says that one type of aggravated felony is a theft offense or burglary offense for which the term of imprisonment is at least one year. How does that not put that in the generic column? Right. My point is that do you start at that point or do we end at that point? And we're trying to end at that point, and it's how do we get to that point? How do we know if the individual committed acts that constitute the generic crime of burglary? In the brief time that you have left, let's say we get to the theft and we have to analyze the theft. How do you – how does the theft survive the modified categorical approach? The record on the theft is limited, and it's unclear in this situation whether or not the government pressed that as a ground – the government here, DHS, I should say, charged a single – well, two grounds of removability. One was whether or not he committed two crimes involving moral turpitude or the aggravated felony. Now, a theft can be an aggravated felony, and we have potentially two aggravated felonies here, but the only aggravated felony that the government, DHS, seemed to press in the removable proceeding was the burglary conviction. However, in Relima Sosa, the Board stated that the failure to pursue something below is not necessarily going to limit the Board from considering it again. If remand is necessary, because DHS prevailed before the immigration judge, so had no reason to challenge it. I'm just saying, what you know on the record, how does theft survive a modified categorical approach? On this record, it probably does not. My point is that on remand, again, it should be remanded for the agency to have the opportunity to consider whether, if they're limited to that record, that that doesn't qualify, but just to address the question at all. And given that DHS did not press that before the immigration judge, it should have the opportunity to introduce those documents. There's a rehearing petition pending in Aguilar-Turcios that actually discusses why this is appropriate in a similar situation. And so I would. Thank you very much. Okay. Thank you, Your Honor. Ms. Hong, it looks like you have 2 minutes and 55 seconds left. Thank you. I have 3 quick points. I do have a different reading of Nijawan as opposed to counsel. My reading, what the Supreme Court said is that the generic offense is defined under the A43G statute. If Congress had defined burglary as burglary of a dwelling, that would be an offense that would trigger the fact-specific circumstance required under Nijawan. However, the A43G is a generic offense because it simply defines burglary, which the courts have accepted again and again as a generic offense. The remand under Nijawan would simply be moot and irrelevant. Furthermore, the Lanferman case that was cited by the government, again in response to the Rule 28 letter, I took out a quote from that decision at page 724 in which the BIA says, unlike a burglary offense, this crime of violence definition does not contain discrete elements that are tied to specific facts. So Lanferman also is a fact-specific circumstance case which does not apply to the analysis of the generic offense. So Lanferman is not a basis for remand. Third, the government said that the BIA did not consider the court disposition. However, page 3 of the BIA decision very much says that it relies upon the disposition report. And in fact, the disposition report is the only basis by which the BIA could have gotten subsection A1. The BIA has considered that document, and we contend it has done so erroneously. Our final point is that because there is simply no document to support the government's contention that the conviction at issue involves a generic burglary offense and involves a theft offense, that termination proceedings are proper. Thank you very much. Thank you very much. The case is now submitted. I appreciate you appearing by phone, Ms. Hong, and thank you, Mr. Hasey. Excuse me. Ms. Hong, are you participating under our pro bono program? Under this case, I am, yes. Okay. Thank you. Thank you for that, too. Thank you very much. All right.
judges: Schroeder, Hawkins, Murguia